Okay, the next case on our morning backet is 516-0519, Levine v. Dunstan. And, um, are we splitting the arguments at all? I'll be arguing for our final judgment. Okay. And how about you all? Are you splitting? I'll take it. I'm sorry? I'll take it. Okay. Then you may proceed. She writes, I follow. Okay, well, that works. Thank you, Justice Gates. My name is Tom Burkhart. I'm here with Co-Counsel Karen Burkhart. As I mentioned earlier, she writes the briefs. I argue them. Hopefully, together, we can make some sense out of this. Well, if not, maybe you can give us an answer. Maybe I can just answer questions. I mean... If it pleases the Court and Counsel, I represent Brad Levine. And we have been here before, obviously. And right now, I approach the Court asking for the Court's help, because I think Madison County desperately needs it. And in trying to work this argument together, I say, you know, the best thing I can do is keep it simple. This is just an appeal from a trial court's order regarding an injunction. Okay? What the Court did, I think they made a mistake in the way they ordered the injunction, because it didn't go far enough, and also the way they limited the injunction by saying, well, you can only use this money to pay attorney's fees. Well, the VAC is tasked with a lot more than just paying attorneys. They have other expenses that the county was interfering with. So how did we get here? You said this case has been before us before, and I have some questions, if you don't mind. I don't. I usually do. Certainly. What I didn't understand was the $700,000. Was this money left over from prior appropriations, or was it appropriated but not actually put on the line item for the VAC? Do you understand my question? I did until the last part of it. In other words, okay, there's a taxing issue that goes on for the VAC, and the county board, once the VAC makes its request, taxes the people in Madison County to raise the money, right? Right. So my question is, this $700,000, was this actually part of the money that was raised through taxes for the VAC, but not used by the VAC? Yes. Okay. And for the record, that is the VAC that we've been using. Right. The Veterans Assistance Commission. The Veterans Assistance Commission, yes. Okay. So was this money held in a separate fund, or was it a line item in the Madison County budget? Well, first of all, I didn't know about this fund when I argued here before. Okay? We kind of got into this, and once I got involved in the case, I discovered that there was this out there. I actually asked the executive board for the VAC, the president and vice president, do you guys know you have $900,000 in investments? What? No. The VAC had no idea they had this, that this money was out there. Now, but to answer your specific question, it is left over from past years. I think Judge Becker made that point at the hearing on November 18th, because he said everybody knows, and it's going to be clear to the people in Mount Vernon, that this $700,000 is there, and it's left over from past years where they didn't spend the money. But you said it's invested. That's what was confusing to me. Well, now, as it developed. Everybody knows. I don't know. As it developed over time, I didn't know what the investments were. I had to question. I said, who's making the call on these investments? Are they truly investments? As I later found out, they're not really truly investments to my knowledge at this point in time. Now, I can get out there. We've got the request for an accounting in the federal case that we've got pending. We might find out what all these things are at that point in time. I feel like asking whether it's a line item or whether they've actually segregated cash. That's why I don't know. I mean, it seemed like it was invested, but then they keep talking about $700,000. And they took money away from that $700,000 to pay expenses when allegedly the VAC exceeded what they brought in or what they were authorized in a given year. That we know.  So is it an investment? My understanding is it's just a cash account. It's actually leftover money sitting out there. Now, if the county was following the law, they have a special account. I'm not sure the county is following the law. But the tax law, and I've cited, I don't know the exact section number, but the county's supposed to say, okay, we're going to get $750,000 for veterans this year. We approve that. What's the percentage rate we need to tack on to the county tax rate to raise it? They levy it. They collect it. And it's supposed to go into a special fund segregated just for VAC purposes. Okay, and that was really why I was asking. Right. Now, if they're following the law, that money should be out there and should be available, and we should be allowed to use it. And it's as simple as that. Because it's already been approved. That's the thing. And where I say Judge Becker made a mistake in his injunction, he says, that money's there. It's available to pay expenses. But you first have to go and get a second approval to go into it, to get into it. I thought we had to resolve it. I thought so, too. And that's one of the reasons I said, you know, wait a minute. Okay, you have a VD-1. We asked for a warrant to be issued to pay expenses. The auditor says no. The finance committee gets involved and says, heck no. They basically are thumbing their nose at this court. And one of the reasons I asked the actual motion for contempt was for Judge Becker to hold the finance committee, the auditor, the state's attorney, and all the county officials that were involved in contempt of this court's order where they had resolved, once you make that approval, you can't deal with the VAC funds. That's their call. That's the VAC's call. And I'm pretty sure that this court, that's exactly what this court said. What happened to the original proceeding that was the subject of what we'd won? I mean, it appeared to me that you filed a new proceeding for an injunction. And when we decided what we'd won, there was a separate proceeding on both, right? No, it was the same mandamus proceeding. The entire underlying case is a simple mandamus case, basically three prongs. Stop the ban on him getting into his office. In other words, provide the superintendent with an office in the county. That's one. Two, pay a salary. Three, pay the expenses and quit interfering with the VAC's expenses once you've approved their annual amount. Right, that was the original proceeding. Right, and that still maintains the proceeding. That's the proceeding that the most recent rulings occurred on, which is the subject of a 2017 appeal, if the court thinks it has jurisdiction over that. But that has nothing to do with this. And that's my point. This is a separate proceeding. Well, in a way. I mean, it's a separate filing, let me put it that way. Yes, because it's not a separate filing. Within the same case, I basically ask, wait a minute, someone's in contempt of court. Because I know what Levine once said, and they're ignoring it. And so, therefore, somebody's got to be given the opportunity. And I did some research, and I said, sure enough, it's out there. The trial court has the authority to hold people in contempt of the appellate court's first mandate. And so, that part of it is new. Me asking the county to be held in contempt. Just to bunch everyone together. Do you think that really everybody can be held in contempt? The state's attorney? Yeah, I think the state's attorney has an obligation. Well, their response is even more caustic. I think their response is saying, we don't have a duty to advise our client of anything. I said, wait a minute. You were there when the Levy 1 happened. You know what the questions were in this panel. You know what they ruled. And it's clear as day in the opinion that was written down. And you're saying you don't have an obligation to tell your own county board that, wait a minute, your actions are in violation of an appellate court opinion. So, you can just sit there and say, I think not. And I think that's what the Schiff case says. What do you think is the scope of our authority in this case? I think you can hold them in contempt. Do you think that this court can hold who in contempt? The finance committee. Everyone on the finance committee who voted to interfere with the expenditure of funds and to refuse to pay Warrant 16-4. How did they come under the jurisdiction of this court? They were each served with the summons. So, they are subject to personal. I shouldn't say each. There was one that was not. We never got service on the committeeman holiday. This court granted the state's attorney a continuance for a later date than the 18th. So, that's kind of out there in abeyance. But he was served. Each one of them served with a citation, a contempt citation, requiring them to appear. Each one of them did, in fact, appear on the 18th in the Madison County Courthouse for that hearing that occurred. But that hearing, the judge did not hold him in contempt. The judge discharged the contempt. How do we then hold him in contempt? Well, the judge, you've got to realize, the trial judge granted the petition for rule to show cause. So, that issue was present before the court on the 18th. Our position is, he made a mistake in discharging the contempt. And so, that's one of the reasons. And I think that's a collateral issue, but a necessary issue to the proceedings with regard to the injunction. If this court, and I think it was abundantly clear what they said in Levine 1, said, once you approve the annual funds, if the BAC says, cut the check, cut the check, that's what I think this court said, and they refused to cut the check, then this court can hold the county officials that did that action in contempt. The state's attorney, I don't think it's a ride, because they just get to say, you know, olly olly oxen free, I don't have a duty to advise. We cite in our brief the very statute that tells the state's attorney what their duty is. And it is, in civil matters, to advise the county and its officials. And for goodness sakes, are we really going to have a situation where the state's attorney of the various counties of the 5th District can get by with ignoring the 5th District's orders? I don't think so. And I think they should be held in contempt when they do that. And to just take the act, it's not like they deny the fact that they refused to speak up at the hearing. They don't deny the fact that Mr. Gilbert was present at that finance committee meeting when they took that action. They say, we don't have a duty to speak up. Really? That's what we're going to do? I mean... Let me ask you another question. Sure. Sorry to interrupt. Why did the court not allow testimony at the hearing? Well, it was over my objection. I wanted to call each and every one of them. I don't know. I'll tell you what happened at that hearing. We had an extremely extensive pre-hearing conference in chambers off the record, where a lot of argument back and forth was taking place. To some degree, Judge Becker tried to say as much as he could on the record once we were in the courtroom. But frankly, he said that, and this was one of my points of the argument. I think his recitation on the record that I read is correct as far as what he was hearing before. Yes. I can rely on that. Yes. And in fact, in the record, and I wrote it down here, after a lengthy pre-hearing discussion, Judge Becker decided that he would not allow me to call any of the alleged contenders to testify under oath. But he said he would presume that he would let the matter proceed under the assumption that if called as witness, it's almost like he conducted an offer of proof right in the courtroom. But this is in the record. He said each of the county officials who would be called to testify would say number A, they knew there was money. B, there was approximately $700,000. C, they could vote to authorize the expenditure of $7,000. And D, they didn't. They refused. Those are facts which you can accept. But that's what you believe the evidence would show. Yes. Well, that's yes. And I think if you go, he says, even if all those facts are present, it makes no difference to me. And I go, what? I didn't understand that. I simply didn't take it. That, to me, sounds like contempt. If I did something like that, I'd be afraid I'd lose my license. But anyway, that's one of the points that I make in the appeal. It's like, wait a minute. You're just going to allow somebody to, a group of people, a county, to ignore the clear language of the Levine one? I think not. And that's why I suggest to you, the research that I did, suggests yes. Rule 366, I think it is, Supreme Court Rule 366. That's this court with all the powers that a trial court has. One of those is to hold people in contempt of court. So yes, I believe you have the authority and should hold those folks in contempt. Speak to me about their motion to strike the supplemental appendix. Kelly's motion is to strike the supplemental appendix. Well, the motion does not attack the accuracy or the validity of the exhibits attached in the supplement. All it says is it shouldn't be allowed. Frankly, I don't know why. Because they were supplementing theirs with bogus stuff. I think in my brief what I said, in my reply brief what I said was, well, instead of me motioning to strike what they put in the record, I'm just going to put in what's there to show what they in fact did. We're dealing with this pursuit of truth here, not technicalities, if you will. And all of that information was before the trial. Yes, it was. And it's available to you on the Internet. The website at MadisonCounty.com, you can get that stuff. It's easily verifiable under Rule of Evidence 201. It's something that you can take judicial notice of. So yes, it's there. And you also filed your own motion that was taken with the case to take judicial notice of the Madison County Auditors. Right. Now you want us to look at the Madison County website. Well, it's available, and it's truthful. And it's the auditor's statement. And it's not denied. They can't deny it. What are we dancing around here for? You know what the records show. And that's an interesting thing, though, to bring that up. The reason I brought that up is it's like the big thing that they convinced Judge Becker of, which I think was a misrepresentation. And I don't usually use that word. But they walk into court and they said, Judge, here's a check for $14,000 and change. That drains the admin account. We're at zero. They put Assistant Auditor Zolzer on the stand. She said, that admin account's at zero now. Judge, you can't hold these people in contempt because they don't have the authority to spend any more money because they're at zero. Guess what happens between the next 15 days? They spend over $65,000. And they cut the checks. And they didn't have an emergency appropriation. Out of the $700,000. No. Well, that's what I think. Yes, I think they've reduced that $700,000 because now it's down to around $500. Well, where else would they get the money? That's why I think you're right. I agree. So that's where they got the money from. Well, they could have. And I argued this at the time. The trial court was very particular about splitting the annual approved funds into the admin account and the direct aid account. Mr. Levine got up and testified on the 18th. He says, you know, we're going to have 53,000, 56,000. I don't remember the exact numbers. But over $50,000 left over. It would be left over. We won't spend it. Use that to pay the warrant. Oh, no, no, no. We can't do that. Why not? There is no reason you couldn't use that. Yes, ma'am. Do you know for certain that there wasn't an executive emergency order with respect to the money spent? What did you say, 45,000? With a 95% degree of certainty, yes. Again, if somebody presents proof otherwise, I wouldn't be able to rebut it. But, frankly, if you look, what I did. How would you know? I'll tell you. What I did was there were two meetings between the 18th and the 30th, the end of the fiscal year. Or maybe three meetings. There were certain meetings. County, God bless technology, publishes those, audios of those on the Internet. So I can actually go and listen to what they're saying. And I even cite that in my brief that fastens the county auditor at the finance committee meeting. He did an emergency appropriation, I want to say for Boy Scouts. I can't remember what it was. I'll defer to the brief. But for some subject that had nothing to do with the VAC. But he did not introduce an emergency appropriation for the VAC. So based upon my listening to those audio recordings, which eventually get transcribed and make a part of the county record, I would say, yes, I know that the emergency appropriation was not, was done. Are there additional questions or should I come back five minutes? That's a question I get to ask. Okay. Okay. Thank you, Mr. Burnham. You'll have time after we hear arguments in Madison County. Thank you. Mr. Blayden. Your Honor, may it please the court, counsel, I'm Philip Blayden. I'm here for all of the defendants in the case with the exception of Sheriff Blayden, who is separately represented by Heidi Eckert. And I need to know, is Mr. Blayden joining the argument of Mr. Blayden? Yes, Your Honor. Okay.  Thank you, Ms. Eckert. You may proceed. Justice Gates, you had asked a question earlier about the $700,000. And I know that you have a background from the private sector and municipal law. So you have an appreciation of how everything comes together at the municipal level to fund operations of the municipal entities. But in this case, the county is required to appropriate funds on an annual basis to allow for expenditures associated with each budgeted line item within each of the funds that are set up in the county. Those expenditures are only to come from funds that have been appropriated within those specific categories of the budget. I don't know if you've seen the budget. They're lengthy. There's a bunch of different funds with different line items, et cetera. But I want to know whether the $700,000 was just a line item or was it in a separate fund? The $700,000 is accounted for as a separate fund within the county's budget. Now, if the court's question is that I don't know the answer to that question, if that $700,000 is parked in its own separate bank account, if that's what the court is asking, or if it's pooled with the remainder of the investments of the county and tracked as accounted for on an accounting basis. I don't know the answer to that question. But I do know that there is a separate fund in the budget specifically for VAC funds. There's a completely separate fund with all of the expenses. It's tracked as a separate fund. Okay, it's tracked as a separate fund so that expenses can be shown. And evidently it's divided into an administrative portion. There's two separate appropriations that the statute, I'll call it the act, the Military Veterans Assistance Act, mandates that there are two separate and distinct appropriations that be made by the county on behalf of the VAC. The first one is a Section 2 of the statute appropriation, which is the one that's designed to carry out the spirit and the intent of the act. The act is designed to provide financial assistance to honorably discharged military veterans and their families. Section 2 says the county is required to appropriate such funds as are just and necessary to further the objectives. Okay. I personally don't feel it necessary for you to tell me what the act says. What is it that the Madison County folks didn't understand about Levite I, which said the county doesn't have the right to interfere with expenditures of the VAC? I don't think that the county viewed the opinion in Levite I as saying that the opinion in Levite I, as it was understood, was that in the limited context that came up in Levite I, the issue that was before this court dealt with expenditures over $500,000 and the procedures to get those approved and the selection of the attorney. Those were ordinances or policies which the court held in Levite I interfered with the operations of the VAC, and therefore the court was not going to allow the county to do those things in that context. Mr. Fassin made the exact same argument before Judge Becker and to the Finance Committee. Isn't that what we have been told, that Mr. Fassin again indicated that expenditures have to go before a separate subcommittee? No, I think what Mr. Fassin indicated was, and what the court's opinion in Levite I of importance does not do, is read Section 9 out of the Military Veterans Assistance Act, which requires the presentation of itemized invoices signed by the superintendent and grants the county specifically, by statute, general oversight over the expenditure of all funds appropriated for the VAC. That's the statutory language, and even though I believe that the court's opinion in Levite I may have said, we're not going to allow the county's ordinances to interfere with the direct operations of the VAC, it did not say that Section 9 of the Act does not apply. So you agree that the court's order in Levite, or is it Levite? I think it's Levite. I believe it's Levite. Regardless, do you believe that the court's order opinion said that you had no right to interfere, and yet based on Section 9, you do believe you have oversight? I don't believe that that's what the court's order said, and I don't believe that that's what the county believed that that's what the court order said. I thought you just acknowledged that. What I said was in that limited context, the county understood that its competitive bidding ordinance, this is what the opinion said. The selection of the attorney bidding ordinance. Those two things said you cannot interfere in the direct operations of the VAC. There's nothing in following the mandates, the statutory mandates of Section 9 of the Military Veterans Assistance Act, which interferes with the operations of the VAC. In fact, that's an operation that's specifically contemplated to occur by statute, which is not being done. And of importance, prior to this court's decision in holding in Levite I, the VAC had always presented itemized statements signed off on by the superintendent for approval. In fact, prior to Levite I, Mr. Burkhart had submitted three separate invoices to the VAC, warrants 16-1, 16-2, and 16-3, all of which were paid by the county, but all of which contained itemized statements of the expenses as required by Section 9 of the statute. It was only after the decision in Levite I that Mr. Burkhart and the VAC interpreted that decision as saying, somehow, although it's completely absent from this court's holding in Levite I, that Section 9 now didn't apply for whatever reason, and the VAC didn't have an obligation to provide itemized statements to the county as a precondition to the payment of those expenses. I don't understand the need for an itemized statement. What was so deficient in Mr. Burkhart's statement? And I do understand there was an error made in that statement after the itemization was entailed, correct? What was so lacking that the county refused payment in the warrant application that was submitted? In warrant 16-4, there was no description of any of the work that was performed by Mr. Burkhart for the VAC. There was, I believe… None. None. Zero. Completely void of any narrative section. So, I believe there was a date, maybe an amount of time, and a corresponding cost. And then an amended warrant was issued, or was submitted. I mean, a portion of the warrant was paid, right? A portion of 16-4. Warrant 16-4 was for approximately $60,000. Right. $14,000, $15,000 of that was paid. Why was it paid? It was paid in part as a sign of good faith, but the county also, in the payment of that expense, also said, we are understanding that you are going to be supplementing this and providing us with the itemized invoice, which never arrived. So the county did go ahead and pay a portion out of the admin fund. That's correct. And was it the admin fund that was, quote, zeroed out? By the payment of that expense for the fiscal year 2016. That appropriation, correct. Correct. And so where did the next $60,000 approximately come from? It was not paid. It was not. No, no. The remainder of the invoice was not paid. I'm not talking about the remainder of the invoice. Were there any other monies paid out of the $700,000 subsequently zeroing out the admin fund? I believe that there may have been payments out of the admin fund, which I believe were also addressed through an emergency appropriation. I know that one was prepared for the county. I also believe that it was adopted. What's the date of the emergency appropriation? I don't know that, Your Honor. So do those appropriations, do they take place publicly? Yes. Okay. So Mr. Burkhart is mistaken when he says that he listened to the recordings and there was no mention of it? I don't know what recordings he listened to. They have recordings for all the different committees, and then there's also recordings for the full county board. I don't know what. I mean, unless you listen, they audio record all of the committee meetings as well. I mean, there's extensive audio. I mean, it's easy enough for me to find out. Well, I mean, there would have had to have been a writing of some kind for a county board to authorize. It's a resolution, Your Honor, yes, that is adopted by the county board. I understand that, but you don't have a date? That would have happened after the court's hearing in Leviti 1 and after it's – I'm sorry, in Leviti 2 and after the decision, correct. I'm confused then as to why you paid the $14,000 something if you were saying that the itemization, the lack of itemization basically absolved you from paying anything. I think the approach at the time was to still try to work this out to bring an end to the litigation with the hopes that at that hearing something could have been breached. It was apparent pretty quickly at that hearing that that was not going to be the case. I believe that was the intention at the time. I'm confused by that. Do you think the payment of $14,000 in change is going to set up to buy an attorney bill of $60,000 for a lawyer who has successfully argued on appeal? Was that like a settlement offer or what? No, it wasn't a settlement offer, and the county's never taken the position that the expenses aren't ultimately owed. I'm trying to tap dance between Leviti 2 and Leviti 3 and just address issues here before the court now. If the county does not dispute that the expenses are owed, why are they not being paid? Because there's no funds left within the admin fund balance for fiscal year 2016 under which to pay those expenses. That is and was the position of the county. And you're relying on Section 9 that allows you to remain county? Correct. That allows the county to oversee. That's the basis for your argument. That's the basis for the general oversight and the request for itemized invoices. Now, the county code, in general, in 55 ILCS, is what deals with budgeting and appropriation and says there has to be an annual appropriation. You can't spend more than what you've approved to be spent. And if you do, you can shore that up by passing an emergency appropriation. The statute, the county code, again, it's in 55 ILCS. I don't have the site off the top of my head. I know it's in the brief. Grants the county board by two-thirds vote the discretionary authority to grant an emergency supplemental appropriation which extends or gives whatever entity it is additional spending, additional appropriation. But this is my problem with your argument. You've touched on it right now, and that is the word appropriation, which is why I began asking about the 7,000 and whether it was appropriated. The county code allows you additional appropriation. If this money had already been appropriated in years past, then what interest does the county have in it anymore? Where is your authority to interfere with proceedings of the VAC, especially if the executive board of the VAC has met, they've approved the bill, they've authorized their superintendent to submit it. Where is your authority deriving from in appropriations that have already been made? Those funds, when you appropriate funds, if I send my kid to the grocery store and say, here's a dollar, go get a pack of gum, you can spend up to a dollar on this. Here's your dollar. It doesn't mean they have to spend the whole dollar. Maybe they go and they spend 60 cents, and they bring back a pack of gum and 40 cents, and I get that 40 cents back. That goes into an account. But these appropriations are annual. By statute, they are required to be annual. That doesn't mean the money evaporates. The money is levy for the benefit of them. Right? By statute. Right. It's based on a request made to the county. It's based on the annual request. So if you say to your child, I'm going to give you a dollar. You can spend up to a dollar. The other alternative is that you don't get the 40 cents back. You've given the child a dollar. Maybe that child wants to save some money. Or maybe that child decides, I don't have to use it all today. I'm going to use it tomorrow for the next pack of gum or gummy bears or whatever they want to buy. So that's my question. It seems more like you lose the ability once you've given the dollar away. Where does your authority come back? Under the county code, those appropriations are annual. So you think the county code can supersede the Illinois statute? The county, I'm sorry, the county code of ILCS. 55 ILCS, yes. No, no, no. This is state statute. Correct. Right. Well, the requirements of 55 ILCS require that there is an annual appropriation that occurs. And it's for expenses. It's for many things. Income and expenses occurring within a certain fiscal year. If you don't spend that money, if I'm at the municipal level in a street department and I've appropriated $100,000 for something and they say, I want to buy a truck, I don't buy the truck that year, they don't come back the next year and say, well, you said I could do this last year, so now I get to do it this year. Because the appropriations are different on an annual basis. Is there a special statute for buying a truck? It doesn't matter what the expense is. I'm asking, is there a special statute? Here we have a special statute that enacted to benefit them. And so the county thinks that if they don't spend the money, sometimes they can take it back? They don't take it back. The money is still there. And there's reasons for that money to be in that fund for a variety of things. One, with the property tax cycle, especially in Madison County, which is adopted or elected to go to a four-payment cycle, there needs to be funds on hand from a cash flow basis to meet projected expenses that are targeted to be paid out of those funds. So it's not like you're starting with zero, a zero fund balance, and then saying, okay, we're going to have this money coming in at some point in the future, which isn't in yet because these are property tax-based revenue. So you're levying. The money comes in down the road. So how do you fund those expenses in the meantime? There's reserves to address those expenses. In addition, if that fund balance gets too high, you know how the county addresses that? They levy less property taxes to spend down that fund balance. It's still the VAC's funds. It's still in their separate account. But maybe they levy less property tax, which is what they've done in the last several years, to reduce the amount of balance that's in that fund. It's the VAC's money. However it's funded, whether it's property tax or this money that's in this account, it's still their money. But it's still subject to an annual appropriation ordinance that gets adopted by the county, which the Military Veterans Assistance Act also specifically requires in both Section 2 and Section 9. It says there's an annual appropriation of these amounts of money. But it doesn't say that the county gets to take it back or even do it. It doesn't say that once it's appropriated, you get to take it back. In other words, you are exactly correct when you talk about the levy. Some years it would be more, some years it would be less. And it's what the VAC believes is necessary to meet the needs of the veterans in their country. So the money that's appropriated does belong to the VAC. And in this case, it turns out, there was left over. The appropriated funds belong to the VAC. Correct. It's like your dollar. The dollar is appropriated to the child. The child gets the dollar. The child may not spend the dollar. The funds on deposit are what we'll call the investments, the $700,000. Those do not belong to the VAC. They can only be used on VAC expenditures, but they do not belong to the VAC. It's only once those funds have been appropriated that they are authorized and approved for use by the VAC as part of the annual budget appropriation process. Okay, so I really want to make sure I understand your position. So the funds do not belong to the VAC, but they're appropriated for use by the VAC. The county on an annual basis at the VAC, it's a collaborative process, but the VAC appropriates the amounts that are approved for expenditure in that fiscal year. If those amounts, let's say that they don't spend the entirety of that balance, they stay in that fund account, and they can still only be used on VAC expenses, but those funds do not actually belong to the VAC. The VAC can't go to the treasurer and say, write a check out of this account because those are our money. They can't do that. Why not? Why can't they say, pay our loan? We did not minimize that. They can if there's money available within their fiscal year appropriation for their administrative expenses. They absolutely can do that. And that's not what we're here saying. And if they don't have money, they still can make an application on an emergency, and they have total discretion as to how they decide what they want to appropriate on an emergency basis. They can petition the county to issue an emergency appropriation to address situations where they've exceeded their budget. That is correct. And they could do that for attorney's fees. They could do that for attorney's fees. In fact, that was actually suggested to the VAC at the time, was that that was the proper course of action to address this issue, which goes to some of the merits of whether injunctive relief is even proper, because if there's an adequate remedy at law, which in this case there is, injunctive relief does not lie, and it's not a proper remedy. But if they did, I'd like to finish my question. If they did ask for an emergency appropriation, you're saying that beyond that, the relief would totally be discretionary with the board? By statute, that's correct. Yes. Perfect. Thank you, judges. Mr. Burkhart, do you have a few words to say? Oh, yeah. Okay. Well, before you begin, Mr. Layden, you have a glass of water. Thank you. This has been an interesting morning. Justice Chapman, what is in the record, I want to point to it. But in September, early September, well before the November hearing, right after Mr. Fassin's made his statements to the county finance committee, the executive board of the VAC met and signed by Mr. Sedlicek, the president, and Ronnie Hicks, the executive vice president of the VAC, they sent a letter to Mr. Fassin. It's dated September. It's referred to in my brief. I don't have the exact site to the record on appeal, but it is in the record. And they said, the VAC said, pay the warrant. Okay? We know the money's there to pay it. And if we run out of money at the end of the year, use as much of the $700,000 as is necessary to pay any additional expenses of the VAC. That's in the letter, and it's in the record. And they chose to make you pay other expenses. Right. And so this whole nonsense about you can't spend any more money is a red herring. It's bogus. They just made it up. September 15th. Thank you. So going backwards in that line, it's like, and this whole argument about limiting the expenses of the VAC to the current fiscal year appropriations. I got news. If you study the county code, the county code, all of the regulations they talk about limit expenditures to what's appropriate and all that, deal with county money. County money. And as I argue in my brief, VAC money is not county money, and this court recognized it in Levine 1 with a clear dichotomy. We're not asking to spend county money. We're asking that the county get out of the way so we can spend VAC money. We're doing what the prior appellate court said you should do in Hazen and in Will County. Both of those cases indicate Section 9 doesn't apply. They get arguing the Section 9 thing and oversight and all that. You said it in Levine 1. We've already been down this road. Will County's case said it. The Hazen case said it. So that nonsense about the county code and the Illinois statutes somehow say that the VAC is limited to spending its money for what's appropriated, frankly, in my reading of the whole thing, we're not subject to appropriations. The VAC operates on its own. It's not supposed to be subject to the politicization of appropriations and what the county court says you can and can't have. The statement was made about what Mr. Fassen said to the county finance committee. He basically said, I'm just not going to pay this. He basically said that. When Justice Gates was asking what doesn't the county get about Levine 1, I'll tell you what they said, and it's in the record. What they said was, oh, it's just dicta. And I go, no, it's not. It is not dicta. It is a clear ruling saying keep your hands off the VAC money. Now, there was some argument being made that the statute provides, the Veterans Assistance Statute, the Military Veterans Assistance Commission Statute, provides that there be two funds. That's not true. Now, it's going to be coming to you in a brief that's going to be filed in about five days. But frankly, if there's any part of an argument that says there's separate funds, and I don't think there is, there's one annual approval, that's where they have their control. And if they don't give us the money we want, we have the right to ask the trial court in a mandamus action, hey, wait a minute, what's really fair here? Let us explain to you our idea. This is what we need this money for. This is what big plans we have to assist veterans so that they're not committing suicide and so that they get their rent paid. And then the judge gets to make the decision. It's not left with the county. That's what all the cases say. But if you read the statute, Section 2 and Section 10, there's four, not two, four funds. One, the aid, direct aid to veterans, that's in Section 2. Two, the salaries. Three, the office expenses. That's a separate fund, and it's in a separate sentence within Section 10. And then four, the fourth fund, is all expenses that the VAC employees have, the superintendent and all his officers, service officers have, which would include attorney's fees to vindicate their rights. That's the fourth fund, the expenses. So what I was getting at is that it's the argument, if you read the statute itself, it's not two funds, it's four. Okay, thank you. Thanks. All right. I appreciate your arguments. This matter will be taken to the submission. The board will issue a divorce. Thank you.